701 N.W.2d 897 (2005)
2005 ND 145
In the Matter of the ESTATE OF Lois Helen RICHMOND, deceased.
Karen Black, Petitioner and Appellant
v.
Donald Richmond, Respondent and Appellee.
No. 20040360.
Supreme Court of North Dakota.
July 25, 2005.
*898 Michael F. Daley, Wheeler Wolf, Bismarck, N.D., for petitioner and appellant.
James J. Coles, Coles Law Firm, PC, Bismarck, N.D., for respondent and appellee.
KAPSNER, Justice.
[¶ 1] Karen Black appealed from a revised judgment granting Donald Richmond's motion for summary judgment dismissing Black's petition to contest the last will and testament of her mother, Lois Helen Richmond, and ordering Black as the personal representative to distribute the estate in accordance with the provisions of the will. We conclude Black failed to raise a genuine issue of material fact to support her claim of fraudulent misrepresentation, *899 and we therefore affirm the revised judgment.

I
[¶ 2] Donald Richmond married Henrietta Bauts on May 20, 1943, in Cook County, Illinois. Donald and Henrietta lived in various cities in Illinois and Ohio during their marriage and the couple had three children born in 1947, 1950 and 1956. Donald's employment required frequent travel, and Donald and Henrietta eventually separated in 1978 or 1979.
[¶ 3] Donald met Lois Bristol during the fall of 1976 while he was working at a trade show in Bismarck. Lois's husband, William Bristol, had died in 1971. Karen Black is Lois and William Bristol's only child. Donald and Lois developed a relationship and Donald ultimately moved from the Chicago area to Bismarck. At the time he left the Chicago area, Donald was not divorced from Henrietta, but he "kn[e]w that she had at least started the divorce process." According to Donald, Lois wanted to get married, but Donald told her he was not sure Henrietta had obtained a divorce from him. In January 1982, Donald took Lois along to a trade show he was attending in the Chicago area so Lois could talk to Henrietta about the status of Donald and Henrietta's marriage. Donald testified:
So she came and we called up Henrietta to make an appointment and she said yes, she'd see her. So I gave her the car because I'm at the show, so I showed her how to get out there. So when she came back, she told me, Well, I saw Henrietta, and Henrietta said the divorce is complete. She showed me some papers, and she's going to send me copies of them. So she said, You're divorced. She said, No sense in putting it off. Let's get married. So we got married.
Lois and Donald were married on March 23, 1982, in Puerto Vallarta, Mexico. According to Donald's daughter, she met with Donald and Lois in 1986 in Ohio and Lois told her "she had spoken to my mother and she knew that the divorce had taken place."
[¶ 4] Lois executed wills on December 18, 1987, and on November 8, 2001. In the 2001 will, similar to the earlier will, Lois bequeathed the home they shared at 815 North 1st Street in Bismarck "to my husband Donald George Richmond, if he survives me. If he does not survive me, said real and personal property shall become a part of the residue of my estate." Lois bequeathed the residue of her estate "to my daughter Karen Kay Black." Lois also nominated Black to be the personal representative of her estate.
[¶ 5] Lois died on March 5, 2003, at the age of 88. Shortly after Black had signed an application for informal probate of Lois's will, Donald's son contacted Black and told her he believed Donald and Henrietta had never been divorced. Henrietta has been mentally incompetent for several years and Black's search of the office of the Clerk of Circuit Court of Cook County, Illinois, produced no records of a divorce between Donald and Henrietta between 1965 and 2004. Donald's daughter testified she was unable to find documentation of Donald and Henrietta's divorce in Henrietta's personal papers. Black testified she also found no divorce papers in her mother's personal effects. On February 21, 2004, Black filed a petition to contest her mother's will under N.D.C.C. § 30.1-15-07. Black alleged that Donald "knowingly and willfully misle[]d the decedent into an unlawful void marriage by misrepresenting to decedent that he was divorced from his first wife," and because "the devisee designation [in Lois's will] was a product of Donald Richmond's *900 fraudulent conduct and misrepresentation, which continued through decedent's date of death, those portions of the Will by which Donald Richmond benefits are invalid." Black sought a ruling that Donald is not entitled to any portion of Lois's estate.
[¶ 6] Donald moved for summary judgment dismissal of the will contest. Following a hearing, the trial court granted the summary judgment motion, reasoning:
Black's only evidence to support the allegation of fraudulent misrepresentation is the inability for either party to produce a divorce decree or judgment. On the other hand, Richmond produces affidavits and deposition testimony indicating Lois knew of his prior marriage and that Lois had actually addressed the issue of the prior marriage before marrying Richmond. The further fact that Richmond and Lois were married for over twenty years is a factor to be considered in determining if such a marriage was based on fraudulent misrepresentation perpetrated by Richmond to inherit Lois's estate.
This Court finds that based on the record before me, Black has failed to make a showing sufficient to establish the existence of fraudulent misrepresentation and there are no genuine issues of material fact.
The trial court dismissed the petition to contest the will and ordered that Lois's estate be distributed in accordance with her will. Black appealed.

II
[¶ 7] Donald contends that Black lacks standing in this probate proceeding to contest any issues relating to Donald and Lois's marriage because allowing her to challenge the marriage after Lois's death violates public policy.
[¶ 8] Donald relies on this Court's decision in Gibbons v. Blair, 376 N.W.2d 22, 25 (N.D.1985), which held that an action to annul a marriage on the ground of fraud under N.D.C.C. ch. 14-04 can only be brought by the defrauded spouse while both parties to the marriage are living. In Gibbons, 376 N.W.2d at 23, a father sued his deceased son's widow to annul the marriage for fraud. Black's probate court action does not seek to annul her mother's marriage to Donald. Rather, Black challenges her mother's testamentary devise to Donald on the ground of fraud, and attempts to use the possible invalidity of the marriage as evidence of Donald's fraudulent conduct.
[¶ 9] As the personal representative of Lois's estate and as a residuary beneficiary and child of the decedent who stands to acquire the disputed property if her action is successful, Black qualifies as an "interested person" under N.D.C.C. § 30.1-01-06(25) with standing to bring this will contest. See Jordan v. Anderson, 421 N.W.2d 816, 818 (N.D.1988). Donald has not cited, and we have not found, any authority that would prohibit Black from attempting to rely upon the alleged invalidity of the marriage as proof of fraud for purposes of challenging her mother's testamentary devise to Donald. Compare Norris v. Harrison, 198 F.2d 953, 954 (D.C.Cir.1952) (indicating in dictum that appellants could attack marriage and conveyance of property if will which devised to them disputed property was admitted to probate).
[¶ 10] We conclude Black has standing in this probate proceeding and is not prohibited from relying on the alleged invalidity of Donald and Lois's marriage as evidence of fraud.

III
[¶ 11] Black contends the trial court erred in granting Donald's motion *901 for summary judgment because there are genuine issues of material fact whether Donald's designation as a devisee under Lois's will was induced by his fraudulent conduct.
[¶ 12] The standard of review for summary judgments is well established. In Zuger v. State, 2004 ND 16, ¶ 7, 673 N.W.2d 615 (citations omitted), this Court explained:
Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. "Whether summary judgment was properly granted is `a question of law which we review de novo on the entire record.'" On appeal, this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.
Because fraud must be proven by clear and convincing evidence, the actual quantum and quality of proof necessary to support liability must be considered in determining whether a genuine factual issue as to fraud exists. State Bank of Kenmare v. Lindberg, 471 N.W.2d 470, 474 (N.D.1991). If the evidence presented is of insufficient caliber or quantity to allow a rational finder of fact to find fraud by clear and convincing evidence, there is no genuine issue of material fact. Smith v. Land O'Lakes, Inc., 1998 ND 219, ¶ 12, 587 N.W.2d 173. In considering a summary judgment motion, we view the evidence in the light most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which reasonably can be drawn from the evidence. Id. at ¶ 9. Nevertheless, mere speculation is not enough to defeat a motion for summary judgment, and a scintilla of evidence is not sufficient to support a claim. State v. North Dakota State Univ., 2005 ND 75, ¶ 8, 694 N.W.2d 225.
[¶ 13] Actual fraud is defined in N.D.C.C. § 9-03-08 as:
1. The suggestion as a fact of that which is not true by one who does not believe it to be true;
2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true;
3. The suppression of that which is true by one having knowledge or belief of the fact;
4. A promise made without any intention of performing it; or
5. Any other act fitted to deceive.
The burden is on the party asserting fraud to establish the elements of fraud, including an intent to deceive. First Union Nat. Bank v. RPB 2, LLC, 2004 ND 29, ¶ 22, 674 N.W.2d 1. Fraud is never presumed, even under circumstances that give rise to a suspicion of fraud. Id. Although fraud actions are not usually suited for disposition by summary judgment, if the plaintiff fails to support her opposition to a summary judgment motion with sufficient facts to show that there is a genuine issue for trial, then summary judgment is appropriate. Kary v. Prudential Ins. Co., 541 N.W.2d 703, 706 (N.D.1996); Black v. Richmond, No. 04-3896, 2005 WL 1684702, at *1 (8th Cir. July 20, 2005).
[¶ 14] Black's theory is that Donald deceived Lois into believing he was divorced *902 from Henrietta so Lois would marry him and name him as a devisee in her will. Consequently, to prevail, Black has the burden of proving by clear and convincing evidence that Donald fraudulently induced Lois into marrying him and that Lois would not have devised property to Donald in her 2001 will had she known that Donald and Henrietta were not divorced. We believe Black has failed to raise a genuine issue of material fact regarding either allegation.
[¶ 15] On cross-examination by Donald's attorney, Black testified in her deposition:
Q. You understand that what Mr. Richmond is going to tell us is that Lois went and talked to Henrietta, and whatever Henrietta told her satisfied your mother. That's what Mr. Richmond is going to say.
A. Okay.
Q. Do you have any evidence or can you name any persons or show me any documents that would be contrary to that assertion by Mr. Richmond?
A. No.
Q. So when you say that your mother was misled, you don't know she was misled?
A. No, I do not.
Q. And you have no way of proving she was misled?
A. No.
Q. And if you know, what documents or persons would you have at the time of trial that would establish that there was misrepresentation?
A. I don't know.
....
Q. (MR. COLES CONTINUING) You don't know the names of any persons that would be witnesses that would support you in your allegation?
A. Not at this time.
Q. And what effort have you done to locate witnesses? Who have you interviewed, or who have you taken statements from that you know of?
A. No one.
....
A. I felt that my mother was not married to Mr. Richmond.
Q. Let's talk about that. What difference does that make? Let's just assume that Mr. Richmond didn't divorce Henrietta. Your mother and Mr. Richmond lived together as husband and wife, sharing the same roof, helping each other, supporting each other, providing for each other for over 20 years. Now, isn't it entirely possible that your mother put Mr. Richmond in her will and named him as the beneficiary on the life insurance based on her love and affection for him and based on the 20-year relationship? Isn't that possible?
A. It's possible.
....
Q. Okay. And, again, that's the same theory, that had your mother known or believed that they weren't married, she wouldn't have provided for him?
A. I don't know that.
Q. You don't know that?
A. No.
[¶ 16] At best, Black has presented evidence of her belief that Lois would not have married Donald if she had known that Donald and Henrietta were not divorced. While the lack of documentation of a divorce may raise an inference about the validity of Donald and Lois's 1982 marriage, we believe the lack of documentation is insufficient in itself to support either a reasonable inference that Donald engaged in fraudulent conduct or that Lois would not have devised to Donald the home the couple shared together for more than 20 *903 years. Compare In re Carson's Estate, 184 Cal. 437, 194 P. 5, 9 (1920) (where will contestants established that testatrix had been "tricked" into a one-year marriage, "[i]t is not an unreasonable inference, from the fact that she had been so recently married when the will was made, that she left the bulk of her estate to Carson because she believed he was her lawful husband, and would not have so left it if she had believed otherwise").
[¶ 17] Viewing the evidence in the light most favorable to Black, we believe there is insufficient evidence for a reasonable trier of fact to find by clear and convincing evidence that Donald engaged in fraudulent conduct or that Lois would not have provided for Donald in her will if she had known their marriage was invalid. We conclude Black failed to raise a genuine issue of material fact to support her claim of fraudulent misrepresentation, and the trial court did not err in granting summary judgment dismissal of the will contest.

IV
[¶ 18] The revised judgment is affirmed.
[¶ 19] MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.
[¶ 20] The Honorable DANIEL J. CROTHERS did not participate in this decision.
VANDE WALLE, Chief Justice, dissenting.
[¶ 21] I respectfully dissent.
[¶ 22] I believe this case is rife with issues of fact. I acknowledge the evidence necessary to prove fraud must be clear and convincing and I understand the position of the majority as well as that of the trial judge that the evidence proffered in this case does not rise to that level. Nevertheless I cannot overcome my impression that the inferences to be drawn from the undisputed facts alone are sufficient to defeat summary judgment. I would reverse the summary judgment and remand the case for trial.
[¶ 23] GERALD W. VANDE WALLE, C.J.